UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Dale A. Williams, Sr.,                                         Civil No. 14-369 (DWF/FLN)

        Plaintiff,

v.                                                                        **REPORT AND**
                                                                            **RECOMMENDATION**

Nancy Johnston et al.,

        Defendants.

_____

Dale Williams, *pro se*, for Plaintiff.
Anthony Noss, Assistant Attorney General, for Defendant.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on Defendants' motion to dismiss Plaintiff's complaint (ECF No. 9). Plaintiff Dale Williams, Sr. is a civilly committed detainee at the Minnesota Sex Offender Program ("MSOP") in Moose Lake, Minnesota. Plaintiff filed this 42 U.S.C. § 1983 action on February 10, 2014 (ECF No. 1). The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons set forth below, the Court recommends that Defendants' motion be **GRANTED in part** and **DENIED in part**.

## I.  FACTUAL BACKGROUND

Plaintiff has a history of committing sexual abuse, particularly involving young girls. *See In re Civil Commitment of Williams*, No. A05-1271, 2005 WL 3470517, at *1 (Minn. Ct. App. Dec. 20 2005). Between 1968 and 1978, Plaintiff sexually abused his niece on an ongoing basis beginning when she was three years old and ending when she was twelve. *Id.* In 1991, Plaintiff sexually abused his three-year-old daughter as well as three young girls who were Plaintiff's neighbors. *Id.* Later that year, Plaintiff pled guilty to four counts of second-degree criminal sexual conduct and was

incarcerated until January 1995. *Id.* While he was incarcerated, Plaintiff completed three sex offender treatment programs. *Id.* In September 1997, Plaintiff sexually abused his girlfriend's daughter. *Id.* He pled guilty to second-degree criminal sexual conduct and served a sentence for that offense until October 2004. *Id.* Civil commitment proceedings were instituted against Plaintiff following his release from prison. *Id.* at *2. After several hearings, Plaintiff was indeterminately committed to the MSOP as a sexually dangerous person and a sexual psychopathic personality. *Id.*

Plaintiff now brings suit against seven state employees who work with the MSOP in both their official and individual capacities. The seven named defendants are (1) Nancy Johnston, Chief Executive Officer of the MSOP; (2) Jannine Hébert, Executive Clinical Director of the MSOP; (3)Thom Lundquist, Clinical Director; (4) Courtney Menten, Clinical Therapist; (5) Paul Mayfield; (6) Joe Mullen; and (7) Shelley Rorvick.[1] Compl. ¶ 7. According to the Complaint, Plaintiff's adult daughter[2] and six-year-old granddaughter were denied approval to visit him sometime in June 2013. *Id.* ¶¶ 9, 12. With regard to the denial, Plaintiff alleges that Mayfield informed him that Mayfield could not "in good conscience encourage this visit due to your daughter being an identified victim and you are not in treatment. So, that as a team we could measure your abilities to be approved in a visit." *Id.* ¶ 12. Additionally, the Complaint indicates that Menten informed Plaintiff on June 27, 2013, that "[a]t this time, the team does not support this [visit]. Please work with your PT (Primary

---

[1]

Plaintiff's Complaint did not include the exact job positions of Defendants Mayfield, Mullen, and Rorvick. Additionally, Plaintiff's Complaint also refers to another MSOP employee, Laurel Tobey, as a defendant. *See* Compl. ¶¶ 7(e), 12. Tobey, however, is not named as a defendant in the case caption and was not issued a summons. *See* ECF No. 7. Accordingly, the Court declines to address any of the arguments Plaintiff makes in his Complaint against Tobey.

[2]

This daughter is the same person whom Plaintiff sexually abused in 1991.

Therapist) to follow the proper communication chain." *Id.* ¶ 25. On June 28, 2013, Plaintiff states

that Lundquist informed him that "to deny a client from visiting someone they victimized is not a

violation of your right, and, is not something that is done without considerable deliberation. Please

work with your clinical team to address their concerns. Please follow the chain of command." *Id.*

¶ 26. On October 24, 2013, Plaintiff claims he filed a grievance, requesting that Hébert reverse the

decision to deny visitation between Plaintiff and his daughter and granddaughter. *Id.* ¶ 11. Hébert

responded,

> I have received your letter . . . regarding a visit with your daughter. Unfortunately,
> I am not in a position to make a clinical determination about this request. In an effort
> to follow up on your request, I will make contact with Ms. Rorvick your primary
> therapist and Joe Mullen the clinical supervisor on your unit. I will ask that they meet
> with you to discuss their decision regarding the visit request. If you do not hear from
> one of them in the next two weeks, please send me a note and I will follow up with
> them.

*Id.* ¶ 11.

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, claiming Defendants have violated

various rights that are guaranteed to him by the U.S. Constitution. *See generally id.* Specifically,

Plaintiff claims that the denial of visitation privileges between him and his daughter and

granddaughter violates his right to freedom of association under the First Amendment and right to

substantive and procedural due process of law under the Fourteenth Amendment. *Id.* ¶¶ 13, 14.

Plaintiff seeks declaratory and injunctive relief "requiring Defendants to provide all Constitutional

[p]arental and [g]randparental rights to which Plaintiff is entitled." *Id.* ¶ V(A)–(B). Plaintiff also

seeks compensatory damages. *Id.* ¶ V(C). Defendants have now moved to dismiss the Complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6). Mot. to Dismiss, ECF No. 9.

## II. STANDARD OF REVIEW

Defendants move to dismiss the Complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). In analyzing the adequacy of a complaint under Rule 12(b)(6), the Court must construe the complaint liberally and afford the plaintiff all reasonable inferences to be drawn from those facts. *See Turner v. Holbrook*, 278 F.3d 754, 757 (8th Cir. 2002). For the purpose of a motion to dismiss, facts in the complaint are assumed to be true. *In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 738 (8th Cir. 2002). Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions that are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity. *See Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).

To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and may not merely state legal conclusions. *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must contain enough facts to state a claim for relief that is "plausible on its face," and a claim has facial plausibility only when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 570; *Ascroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is not akin to a "probability requirement," but it calls for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678.

*Pro se* pleadings should be liberally construed, and are held to a less stringent standard when challenged by motions to dismiss. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Horsey v. Asher*, 741 F.2d 209, 211 n.3 (8th Cir. 1984). Although it is to be liberally construed, a *pro se* complaint

must still contain specific facts to support its conclusions. *Kaylor v. Fields*, 661 F.2d 1177, 1183 (8th Cir. 1981).

### III. LEGAL ANALYSIS

**A.     Plaintiff's claim against Defendants in their official capacities for monetary damages**

Defendants argue that the Court lacks jurisdiction over Plaintiff's § 1983 claims for monetary damages brought against Defendants in their official capacities because the Eleventh Amendment generally prohibits suits against a state in federal court by § 1983 claimants. Defs.' Mem. in Supp. of Mot. to Dismiss 5–6, ECF No. 11; *see Treleven v. Univ. of Minn.*, 73 F.3d 816, 818 (8th Cir. 1996) ("[T]he Eleventh Amendment prohibits federal-court lawsuits seeking monetary damages from individual state officers in their official capacities because such lawsuits are essentially for the recovery of money from the state."). Plaintiff does not dispute this. *See* Pl.'s Resp. Mem. 3, ECF No. 16. The Court agrees with Defendants. Therefore, to the extent that Plaintiff's Complaint seeks monetary damages from any Defendant in his or her official capacity, the Court recommends that Plaintiff's claims be dismissed.

**B.     Plaintiff's claims against Defendants Johnston, Rorvick, and Mullen**

Next, Defendants argue that Plaintiff has failed to state a cognizable § 1983 claim against Defendants Johnston, Rorvick, and Mullen "because the complaint fails to assert particular factual allegations against these Defendants supporting any particular acts or omissions that can be plausibly viewed as violating his constitutional rights." ECF No. 11 at 7. Plaintiff disagrees, claiming that he has adequately alleged constitutional violations against all named Defendants. *See* ECF No. 16 at 6. The Court agrees with Defendants.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the

5

Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Although federal courts view *pro se* pleadings liberally, "such pleadings may not be merely conclusory: the complaint must allege facts, which if true, state a claim as a matter of law." *Geiger v. Minn. Dept. of Human Servs.*, No. 13-2140, 2013 WL 5596599, at *2 (D. Minn. Oct. 11, 2013) (citing *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980)). Liability pursuant to § 1983 "requires a causal link to, and direct responsibility for, the deprivation of rights" protected by the Constitution. *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). In other words, civil rights claimants must plead facts showing each defendant's personal involvement in alleged constitutional wrongdoing. *Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999). "In sum, when a plaintiff seeks relief under § 1983, his complaint must set forth specific factual allegations showing what each named defendant allegedly did, or failed to do, while acting under color of state law, which purportedly violated the plaintiff's federal constitutional rights." *Knutson v. Ludeman*, No. 10-357, 2011 WL 821253, at *4 (D. Minn. Jan. 12, 2011).

        In the present case, the Court finds that Plaintiff has failed to allege sufficient facts to support his § 1983 claims against Johnston, Rorvick, and Mullen. Plaintiff's Complaint only specifically mentions Defendants Johnston, Rorvick, and/or Mullen in three paragraphs. In paragraph 16, Plaintiff generally states that "Defendants Johnston, Mayfield, Lundquist, Rorvick, Mullen, Menten, Tobey, and Hébert violated Plaintiff's constitutional rights by establishing and applying a policy that precludes Plaintiff from having in-person visits with his adult daughter and his 6-year-old granddaughter." ECF No. 1 ¶ 16. Additionally, Plaintiff states that by denying his family's visitation request, he is being punished by Defendants Johnston, Mayfield, Menten, Tobey, Mullen, Rorvick,

and Hébert. *Id.* ¶ 21. Finally, in paragraph 11, Plaintiff claims that Hébert informed him that she would contact Rorvick and Mullen and ask that they meet with him to discuss his requested visit. *Id.* ¶ 11. These claims are only conclusory allegations and do not suffice to adequately state a claim under the Federal Rules of Civil Procedure. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."); *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) ("[A] civil rights complaint must contain facts which state a claim as a matter of law and must not be conclusory."). There are no factual allegations in the Complaint that describe any specific act or omission that is directly attributable to Johnston, Rorvick, and/or Mullen. Although Plaintiff claims that these three defendants established and applied the policy in question, Plaintiff does not provide any specific examples of how these Defendants either established the policy or instituted it. Additionally, the Complaint does not include any details regarding whether Hébert in fact contacted Rorvick and Mullen about meeting with Plaintiff and what, if anything, occurred pursuant to that meeting.

Therefore, the Court concludes that Plaintiff has not adequately pled an actionable claim against Defendants Johnson, Rorvick, or Mullen. Accordingly, to the extent Defendants seek to dismiss the Complaint as to all claims against Defendants Johnson, Rorvick, and Mullen, the Court recommends that Defendants' motion be granted.

**C.    Plaintiff's claims against Hébert, Mayfield, Lundquist, and Menten**

Plaintiff alleges that Defendants Hébert, Mayfield, Lundquist, and Menten[3] violated

---

[3]

Because the Court recommended dismissing Johnston, Rorvick, and Mullen above, the Court's use of the term "Defendants" for the remainder of this Report and Recommendation specifically refers to only Hébert, Mayfield, Lundquist, and

Plaintiff's freedom of association rights under the First Amendment and Plaintiff's due process rights under the Fourteenth Amendment by prohibiting his adult daughter and his six-year-old granddaughter from visiting him at the MSOP. ECF No. 1 ¶ 13. Specifically, Plaintiff claims that other than a grievance procedure, "Defendants have not provided any procedure for challenging any ruling prohibiting [Plaintiff] from visiting his adult daughter and 6-year-old granddaughter." *Id.* ¶ 14. Additionally, Plaintiff argues that Defendants "have established and applied the policy restricting in-person visits between Plaintiff, his adult daughter and his 6-year-old granddaughter, in an arbitrary and capricious matter." *Id.* ¶ 16.

Unlike Plaintiff's allegations against Defendants Johnston, Rorvick, and Mullen, Plaintiff's Complaint contains specific allegations of wrongdoing against Defendants Hébert, Mayfield, Lundquist, and Menten. As stated above, Plaintiff claims that Mayfield, Lundquist, and Menten all made the decision to deny his visitation request. For example, Plaintiff received a letter from Mayfield on June 20, 2013 stating that he could not encourage the visit due to Plaintiff not being in treatment. ECF No. 1. ¶ 12. Mayfield reaffirmed this decision on June 21, 2013. *Id.* ¶ 29. On June 27, 2013, Menten informed Plaintiff that his clinical team did not support the visitation request. *Id.* ¶ 25. Additionally, Lundquist informed Plaintiff on June 28, 2013 that denying visitation with one of Plaintiff's former victims was not a violation of Plaintiff's rights. *Id.* ¶ 26. Additionally, Plaintiff claims that Hébert upheld the denial of Plaintiff's visitation request, which was evidenced by a letter Hébert sent to Plaintiff on October 24, 2013. *Id.* ¶ 11. According to Plaintiff, Hébert had the authority to reverse the decisions of Mayfield, Lundquist, and Menten, but instead informed Plaintiff that she was not in a position to make a clinical determination about this request. *Id.* ¶¶ 10–11. These

---

Menten.

actions, according to Plaintiff, violated his constitutional rights under the First and Fourteenth Amendments. The Court finds that these allegations are not merely conclusory, but specific allegations of wrongdoing. Accordingly, the Court's attention shifts to whether these facts, even if true, state a claim as a matter of law.

Plaintiff directs this Court to rely on the Report and Recommendation that was issued in a factually similar case, *Knutson v. Ludeman*, No. 10-357 (PJS/LIB), 2011 WL 821253 (D. Minn. Jan. 12, 2011), *report and recommendation adopted by* 2011 WL 808189 (D. Minn. Mar. 1, 2011). In *Knutson*, the plaintiff was a civilly committed detainee at the MSOP. Although plaintiff had been approved to visit with his minor daughter, this visitation was revoked after the MSOP adopted a new visitation approval system. In response to this revocation, plaintiff brought a § 1983 action against numerous MSOP defendants, claiming they violated his First Amendment rights by preventing him from associating with his daughter, his Eighth Amendment rights by subjecting him to cruel and unusual punishment, and his Fourteenth Amendment right to procedural and substantive due process by arbitrarily depriving him of his right to visit with his daughter. *Id.* at *2. Defendants brought a motion to dismiss, arguing that plaintiff failed to state a cause of action on which relief could be granted. In denying the defendants' motion to dismiss, the court found that plaintiff had alleged sufficient factual allegations to plead a cognizable claim. *Id.* at *8–9.

In the present case, Plaintiff requests that this Court rely on the reasoning set forth in *Knutson* and find that it is premature to dismiss Plaintiff's claims at this time. ECF No. 16 at 5. Indeed, most of Plaintiff's arguments against Defendants' motion to dismiss come directly from the court's reasoning in *Knutson*. *See generally* ECF No. 16. Defendants, however, argue that the *Knutson* Report and Recommendation does not provide viable support for the legal proposition that

9

Plaintiff has a constitutionally protected right to visitation with anyone, and thus the Court should not rely on the findings made in *Knutson*. ECF No. 17 at 6.

After reviewing the parties' arguments and the *Knutson* decision, the Court finds that it is important to discuss Plaintiff's First Amendment and Fourteenth Amendment claims separately, something the *Knutson* court did not do. Accordingly, while the Court takes notice of the findings made in *Knutson*, the Court declines Plaintiff's request to simply rely on *Knutson* as a basis to deny Defendants' motion to dismiss.

### 1.      Plaintiff's First Amendment Claim

Although it appears from Plaintiff's Complaint that his primary allegations are related to his due process claims (i.e., that the MSOP's visitation policy does not contain a viable mechanism to challenge a visitation denial and that the policy was applied in an arbitrary and capricious manner), which is discussed below, Plaintiff also alleges that the fact he was denied visitation with his daughter and granddaughter violated his freedom of association rights under the First Amendment. ECF No. 1 ¶ 13.

Defendants argue that because Plaintiff is civilly committed, he does not possess a constitutionally protected interest that supports a First Amendment claim. ECF No. 11 at 11. In support of their argument, Defendants cite numerous cases from the United States Supreme Court, the Eighth Circuit, and various other courts throughout the country. *See generally id.* at 10–14. None of these cases, however, state that civilly committed individuals lose all of their freedom of association rights under the First Amendment when they are committed. For example, Defendants cite the case *Harmon v. Auger*, 768 F.2d 270 (8th Cir. 1995) for the proposition that prisoners have no constitutionally-protected liberty interest to visitation with any particular person. ECF No. 11 at

12. In *Harmon*, two inmates challenged two prison policies that limited their contact visitation privileges. *Id.* at 272. Finding that no constitutional violation occurred, the Eighth Circuit stated that under *Block v. Rutherford*, 468 U.S. 576 (1984), "an inmate has no constitutional right to contact visitation, and thus, "if a restriction is not punitive but merely incidental to, and reasonably related to, a legitimate government objective, and not excessive to its purpose, there is no constitutional violation." *Id.* at 273. Thus, the Eighth Circuit found that the defendants did not violate any of plaintiffs' rights because there was a legitimate interest in preventing unauthorized use of drugs in prisons and the procedures used by the defendants to limit contact visitation of the prisoners did not "run afoul of any liberty interests" under *Block*. *Id.*; *see also Ware v. Morrison*, 276 F.3d 385, 387–88 (8th Cir. 2002) (stating that the suspension of a prisoner's visitation privileges implicated no constitutionally protected interest).

These cases cited by Defendants, however, are in the context of prisoners' rights, not the rights afforded to individuals who are civilly committed. The Eighth Circuit has explicitly held that committed persons at the MSOP are analogous to pretrial detainees, not prisoners, because "confinement in a state institution raise[s] concerns similar to those raised by the housing of pretrial detainees, such as the legitimate institutional interest in the safety and security of guards and other individuals in the facility, order within the facility, and the efficiency of the facility's operations." *Serna v. Goodno*, 567 F.3d 944, 948 (8th Cir. 2009). As such, the aforementioned cases cited by Defendants are distinguishable.

Additionally, the Supreme Court has acknowledged that outside the prison context, "there is some discussion in our cases of a right to maintain certain familial relationships, including association among members of an immediate family and association between grandchildren and

grandparents." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) (citing *Moore v. E. Cleveland*, 431 U.S. 494 (1977); *Meyer v. Nebraska*, 262 U.S. 390 (1923)). Although "freedom of association is among the rights least compatible with incarceration," the Supreme Court has specifically stated that this does not imply that "any right to inmate association is altogether terminated by incarceration or is always irrelevant to claims made by prisoners." *Id.* Therefore, if prisoners continue to have some freedom of association rights, civilly committed individuals at the MSOP must also have such rights. *Cf. Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006) (stating that a civilly committed person is entitled to more considerate treatment and conditions of confinement than a prison inmate).

Furthermore, Minnesota law states that civilly committed patients have a "right to receive visitors." Minn. Stat. § 253B.03, subdiv. 3. Although the statute states that this right may be limited if the medical welfare of the patient requires it, it is nonetheless clear that civilly committed patients at the MSOP have at least some right to visitation.

Because the Court finds that Plaintiff had at least some visitation rights under the First Amendment, the Court's analysis turns to whether Defendants can show that, as a matter of law, their actions did not impinge on Plaintiff's First Amendment rights. In *Turner v. Safley*, 482 U.S. 78, 89 (1987), the Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." In making this determination, the Court weighed four factors:

(1)     whether there is a valid, rational connection between the regulation and the legitimate governmental interest put forward to justify it;
(2)     whether plaintiff has alternative means of exercising his First Amendment rights;
(3)     the impact that accommodation of his First Amendment rights would have on guards and other patients, and on the allocation of the general resources

12

of the institution; and

(4)     whether obvious, easy alternatives exist to meet the state's objectives.

*Id.* 89–91. The *Turner* test has been applied to other First Amendment claims by individuals committed to the MSOP. *See, e.g.*, *Ivey v. Mooney*, No. 05-2666, 2008 WL 4527792, at *10 (D. Minn. Sept. 30, 2008); *Semler v. Ludeman*, No. 09-0732, 2010 WL 145275 (D. Minn. Jan. 8, 2010).

Based on the evidence before the Court at the present stage, the Court is unable to adequately weigh the *Turner* factors at this time. *See Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (stating that "matters outside the pleading may not be considered in a Rule 12 motion to dismiss"). The precise visitation policy at issue in this case has not been attached to either the Complaint or the motion to dismiss. Additionally, no depositions of the parties have been taken to provide context to the policy's purpose and the state's objectives in implementing the policy. Accordingly, granting Defendants' motion to dismiss Plaintiff's First Amendment claim without adequate information necessary to weigh the *Turner* factors would be premature. Although it is entirely possible that the policy at issue will satisfy constitutional muster once additional facts are developed in discovery, the limited record in front of the Court at this time does not support Defendant's motion to dismiss.

Plaintiff has alleged that he applied for visitation with his daughter and granddaughter, which was denied by the Defendant MSOP employees. The Court concludes that Plaintiff has alleged sufficient facts to plead a cognizable claim that Defendants violated his right to association under the First Amendment by refusing to allow visitation with his daughter and granddaughter. As such, the Court recommends that Defendants' motion to dismiss Plaintiff's first amendment claim be denied.

**2.     Due Process Claims**

13

The crux of Plaintiff's Complaint is that he was deprived of procedural and substantive due process rights under the Fourteenth Amendment because the decision to deny visitation with his daughter and granddaughter was "arbitrary and capricious" and because "Defendants have not provided any procedure for challenging any ruling prohibiting [Plaintiff] from visiting his [daughter and granddaughter]." ECF No. 1 ¶¶ 13, 14, 18. In response, Defendants argue that Plaintiff's procedural due process claim should be dismissed because (1) Plaintiff does not have a constitutionally protected interest in visitation with anyone; and (2) Williams was given adequate reasoning why his visitation request was denied. ECF No. 11 at 14–16. As to Plaintiff's substantive due process claim, Defendants assert that it lacks merit because the decision to deny visitation was not arbitrary punishment, but rather a professional judgment determination due to the fact Plaintiff was not in treatment. *Id.* at 19.

The Fourteenth Amendment states that the government shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV. In evaluating a due process claim, the Court must evaluate whether the alleged actions were arbitrary:

> [T]he touchstone of due process is protection of the individual against arbitrary action of government, *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974), whether the fault lies in a denial of fundamental procedural fairness, *see, e.g.*, *Fuentes v. Shevin*, 407 U.S. 67, 82 (1972) (the procedural due process guarantee protects against "arbitrary takings"), or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective, *see, e.g.*, *Daniels v. Williams*, 474 U.S. 327, 331 (1986) (the substantive due process guarantee protects against government power arbitrarily and oppressively exercised).

*Cnty of Sacramento v. Lewis*, 523 U.S. 883, 845–46 (1998).

A procedural due process claim is reviewed in two steps. First, the Court asks whether the plaintiff has been deprived of a protected liberty or property interest. *Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). If the plaintiff does have a protected liberty interest, the court

then must decide what process the plaintiff is entitled to by balancing the specific interest that was affected, the likelihood that the institutional procedures would result in an erroneous deprivation, and the institution's interest in providing the process that it did, including the administrative costs and burdens of providing additional process. *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006) (citing *Mathews v. Eldridge*, 424 U.S. 319, 332–35 (1976)).

In determining whether a substantive due process right protected by the Fourteenth Amendment has been violated, it is necessary to balance "the liberty of the individual" and "the demands of an organized society." *Youngberg v. Romeo*, 457 U.S. 307, 320 (1982). The substantive component of the Due Process Clause is violated by government action only when it "can be properly characterized as arbitrary, or conscious shocking, in a constitutional sense." *Cnty. of Sacramento*, 523 U.S. at 846.

As stated above, it is clear to this Court that Plaintiff has at least some right of association under the First Amendment, even though he is civilly committed at the MSOP. Thus, in order to sustain Defendants' motion to dismiss, the Court must be able to determine as a matter of law that the process afforded to Plaintiff was satisfactory under the Fourteenth Amendment and that the decision to deny visitation was not made arbitrarily or for punishment purposes.

As was the case with Plaintiff's claim under the First Amendment, the Court concludes that the factual allegations in the current record are insufficient to determine whether there was a procedural due process violation. Plaintiff has alleged that (1) a request was made to allow Plaintiff's daughter and granddaughter to visit Plaintiff at the MSOP; (2) Defendants Mayfield, Lundquist, Menten refused to approve the visitation request; (3) Plaintiff's treatment team did not "feel comfortable" approving the visitation request due to the fact that Plaintiff's daughter was an

15

identified victim of Plaintiff's sexual misconduct; (4) Hébert declined to address the visitation issue after Plaintiff filed a grievance, even though she had the ability to overturn the denial; and (5) Plaintiff would not be able to visit his daughter or granddaughter until he entered into treatment at the MSOP. *See generally* ECF No. 1. Standing alone, these factual allegations do not allow the Court to find, as a matter of law, that Defendants' actions provided Plaintiff with adequate process or that denying the visitation request was not arbitrary and capricious. Additional information, such as the policies at issue, how the policies are generally applied to visitation requests, and whether Plaintiff's requests were afforded proper consideration, will be disclosed during discovery. Such information is necessary in order to provide this Court with sufficient information to determine whether the visitation policy was applied to Plaintiff in a manner that did not violate his constitutional rights.

As stated above, it is entirely possible that the visitation decision was well-supported and not applied in an arbitrary and capricious manner. But the limited record that is currently before this Court is insufficient to determine that, as a matter of law, the policy was applied in a reasonable manner. Accordingly, the Court finds that Plaintiff has pled a cognizable claim against Defendants. Thus, the Court recommends that Defendants' motion to dismiss Plaintiff's procedural and substantive due process claims be denied.

### 3.       Qualified Immunity

Lastly, Defendants claim that even if the Court were to conclude that Plaintiff states a cognizable claim for relief, Defendants are entitled to qualified immunity and the Court should "dismiss Plaintiff's claims against Defendants for damages because the complained of conduct did not violate clearly established constitutional rights of which a reasonable person would have

known." ECF No. 11 at 20.

"Qualified immunity is a defense only against a claim in one's individual capacity." *Bankhead v. Knickrehm*, 360 F.3d 839, 844 (8th Cir. 2004). Qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Two questions are considered to determine whether officials are protected by qualified immunity: (1) whether the facts alleged, viewed in the plaintiff's favor, support a finding that the conduct of the defendants violated a constitutional right; and (2) whether the at issue was "clearly established" at the time of the defendant's alleged misconduct. *Perason v. Callahan*, 555 U.S. 223, 232 (2009). Second, "the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.*

As stated above, the Court concludes that at the time Plaintiff was denied visitation from Defendants, it was clearly established that Plaintiff had at a constitutional right to association with family members. *See Overton*, 539 U.S. at 131; Minn. Stat. § 253B.03, subdiv. 3. Additionally, if Defendants arbitrarily denied Plaintiff's visitation request, then they arguably violated Plaintiff's clearly established right. As discussed above, based on the information currently before the Court, the Court is unable to determine whether the Defendants' acted arbitrarily in denying Plaintiff's visitation request. Accordingly, the Court concludes that Defendants are not entitled to qualified immunity at this time. *See also Knutson*, 2011 WL 821253, at *10 (concluding defendants were not entitled to qualified immunity).

Additionally, as the *Knutson* court recognized, even if Defendants were entitled to qualified

immunity, Plaintiff's suit against Defendants would continue because qualified immunity is not applicable to claims for equitable relief. *See Grantham v. Trickey*, 21 F.3d 289, 295 (8th Cir. 1994) ("There is no dispute that qualified immunity does not apply to claims for equitable relief."). Here, Plaintiff seeks declaratory and injunctive relief that would provide him visitation with his daughter and granddaughter. Thus, even if qualified immunity applied, Plaintiff's claims to enjoin Defendants' conduct would remain alive.

## V. RECOMMENDATION

Based upon the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.  To the extent Defendants seek to dismiss all claims against the named Defendants in their official capacities for monetary damages, Defendants' motion be **GRANTED**;

2.  To the extent Defendants seek to dismiss all claims against Defendants Johnston, Rorvick, and Mullen in both their individual and official capacities, Defendants' motion be **GRANTED** and Defendants' Johnston, Rorvick, Mullen, and Hébert be **DISMISSED WITH PREJUDICE**;

3.  To the extent Defendants seek to dismiss all claims against Defendants Hébert, Mayfield, Lundquist, and Menten in their individual capacities, Defendants' motion be **DENIED**.

DATED: January 28, 2015

    s/Franklin L. Noel
FRANKLIN L. NOEL
United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **February 11, 2015**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection

18

is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.